WILLIAM F. OTIS, Executor, *vs.* JOHN T. COFFIN & others.

A will duly executed in England, where the testator resided and died, contained the following bequest: "My property at Boston, North America, under the care of J. S., amounting by the last account to eleven thousand five hundred pounds, I desire may be left under his control until it amounts to twenty thousand pounds, then the interest to be paid to A., and the principal to B. [son of A.], he having no children, then to his brothers in succession, on the demise of the father A., failing in male issue in the family of the said A., then the twenty thousand pounds to be divided among any female children the said A. may leave." J. S. was named in the will as executor and trustee, and had previously purchased, in trust for the testator, land situated in Brighton, near Boston, and included its value in the account mentioned in said bequest. *Held,* that the testator's interest in this land was included in the bequest; that the property was to be held by the trustee until it amounted to twenty thousand pounds sterling, computed at $4.44 to the pound; and the income, after that, paid to A. for life, and the principal held in trust until A.'s decease; and that the further limitations could not be determined until that time.

SHAW, C. J. This is a suit in equity, brought by Otis as executor and trustee under the will of Admiral Sir Isaac Coffin. This will was made in England on the 15th of March 1839; and a codicil on or about the 15th of May of the same year, which does not affect the construction on any point under consideration in the present case. The admiral died in July of the same year, and his will was afterwards, in January 1840, proved before the prerogative court of Canterbury, and a copy of it, pursuant to the statute of 1840, § 1, was in 1843 presented to the probate court of this county, and letters testamentary issued thereon to Otis, one of the executors named in it.

Otis brings this bill to obtain a decree of this court as a court of equity, on the ground that questions have arisen between him and some of the devisees and other beneficiaries under the will, respecting the execution of a trust; and also because questions have arisen affecting the rights of more than two distinct parties; under which heads of equity he claims that this court have jurisdiction.

All the questions which have been brought before the court arise upon the construction of the will. The will itself is quite concise, and somewhat obscure. The clause on which these

questions arise is the following: " My property at Boston, North America, under the care of William Foster Otis, Esquire, amounting by the last account to eleven thousand five hundred pounds, I desire may be left under his control until it amounts to twenty thousand pounds, then the interest to be paid to John Townsend Coffin, and the principal to Isaac Tristram Coffin, he having no children, then to his brothers in succession, on the demise of the father, John Townsend Coffin, failing in male issue in the family of the said John Townsend Coffin, then the twenty thousand pounds to be divided among any female children the said John Townsend Coffin may leave." No other clause in the will materially affects the construction, and the will contains no residuary clause. John Townsend Coffin was a nephew of the testator; and Isaac Tristram Coffin is the only son of John, and has one sister.

By the facts it appears, that before the date of the will of Sir Isaac Coffin he had placed a considerable amount of personal property in trust with Otis, to be invested, used and managed for him ; also, that by his order Otis had purchased a parcel of real estate in Brighton, taking a deed in his own name in trust for Sir Isaac Coffin, in terms.

We have no doubt that, by force of this will, Otis was constituted not only an executor, but a trustee. It is a general rule frequently adopted and practised on in this commonwealth, that where a testator makes such a disposition of his personal property as, in order to carry the objects and purposes of it into effect, it is necessary that capital be invested and employed to raise an income, and such income is given to one or more for life, and then the property is given over; if there is no trustee specifically appointed to execute such trusts, the executor is *ex officio* trustee for the purposes specified, and his bond, binding him to perform the duties of executor according to the will, covers his official acts until some other trustee is appointed, and he has accounted for and paid over the funds to such special trustee. But in the present case Otis is named trustee, as well as executor, and the direction is that the property shall remain under his control until it amounts to a certain sum—implying

that it was already held by him in trust, and directing it to con
tinue.

1. A question has been raised whether, under the description
used in the will, the constitution of the trust can rightly be held
to include the estate in Brighton. This estate, in terms, was
taken to Otis in trust, and very probably for the reason stated,
that Admiral Coffin was an alien, and until a recent period an
alien could not legally hold real estate in his own name. But
of this we understand a third person, the defendant John Park-
inson, holds an equitable life estate, by the appointment of Sir
Isaac Coffin. So far as he was concerned, his only right and
interest was an equitable one; a right to call on Otis to sell this
property and convert it into money, or to convey it according to
his appointment, and account with him for it. This equitable
interest had been from time to time included in Otis's accounts
as part of the fund, and constituted a part of the eleven thou-
sand five hundred pounds mentioned in the will. We are
therefore of opinion that, by the description used, the testator
intended to include this equitable reversionary interest; and
this being a question of intent upon the construction of an
obscure will, we are of opinion that this interest was embraced
in the term " my property at Boston, North America, under the
care of William F. Otis, Esquire, amounting " &c.

2. In directing that the money be held until it shall amount
to £20,000, we can have no doubt that it means pounds ster-
ling. Still a question arises, what amount in federal currency
is equal to a pound sterling. In the first place, we are to con-
sider that the money is not to be transmitted to England in
satisfaction of a debt due there; it is still to remain here, per-
haps for many years, and when distributable it will be distrib-
utable here. We are therefore of opinion that it is to be
computed at $4.44 to the pound; and therefore it is to be fixed
at $88,888.88, and no more.

3. From and after the time when the fund has amounted to
the sum fixed, all the income accruing thereon, including that
which has accrued, if any, is forthwith payable to John Town-
send Coffin, to his own use. And as it is a payment of income

to him, and no term of time limited, it is for the time of his life.

One construction contended for by some of the parties is that when the £11,500 have amounted to £20,000, as all over the first named sum would be interest, it was the intent of the testator that the whole £20,000 should be at once paid out; £8,500, under the name of interest, to John Townsend Coffin; and the residue, under the name of principal, to Isaac Tristram Coffin. We think this quite impossible. A later provision says: " Failing in male issue in the family of John Townsend Coffin, then the £20,000 to his female children." Now it cannot be possible to know, till the decease of John Townsend Coffin, whether he will die without male issue. The will therefore supposes and assumes that the £20,000 are to remain during the life of John Townsend Coffin; and as he is to have all the interest of the fund, he is to have the interest of £20,000 during his life.

4. Another point has been made, requesting the court to decide how the fund is to be divided after the death of the first beneficiary, John Townsend Coffin. On the one side, it is contended, on the part of Tristram, that the contingency alluded to in the will was the contingency of the state of things as it existed when the property amounted to £20,000, and he being living then, the right vested to the principal, though some time may elapse before he will come into the enjoyment. On the contrary, it is urged that the contingencies must remain during the life of the *cestui que trust,* and if there are no male issue of John Townsend Coffin at that time, it will go to the daughters, if any.

It is impossible that this trust can be brought to a close now, or at any time during the life of John Townsend Coffin, and therefore it becomes unnecessary to express an opinion upon that subject; and we think it would be quite irregular to do so, because other parties, not now before the court and not represented, may claim to have rights and interests which ought to be respected and secured. Notwithstanding all the numerous gifts over on certain contingencies, it may happen that they will

all fail, and this trust will stand as a resulting trust for the next of kin of the testator. *Decree accordingly.*

*H. Ritchie*, for the plaintiff, to the point that the estate in Brighton was included in the bequest, cited *Doe* v. *Allcock*, 1 B. & Ald. 137 ; *Marshall* v. *Hopkins*, 15 East, 309 ; *East* v. *Cook*, 2 Ves. Sen. 31 ; 1 Jarman on Wills, 317, 437 ; 1 Roper on Legacies, 288 ; *Goodtitle* v. *Southern*, 1 M. & S. 299 ; *Roe* v. *Vernon*, 5 East, 51 ; *Vicars Choral de Litchfield* v. *Ayres*, W. Jon. 435 ; *Skerratt* v. *Oakley*, 7 T. R. 492 ; to the point that there being no express direction in the will to convert the Brighton estate into personalty, it could not be treated as personalty, 1 Jarman on Wills, (Amer. ed.) 523, *note ;* 2 Story on Eq. §§ 1214 *Chitty* v. *Parker*, 2 Ves. Jr. 271 ; *Fletcher* v. *Ashburner*, 1 Bro. C. C. 497 ; to the point that by " twenty thousand pounds " the testator meant twenty thousand pounds sterling, *Wallis* v. *Brightwell*, 2 P. W. 89 ; 1 Roper on Legacies, 858 ; and to the point that, in the absence of any direction to pay this in England, pounds sterling must be computed at the established par of exchange, namely, $4.44 to the pound, *Lansdowne* v. *Lansdowne*, 2 Bligh, 60 ; *Phipps* v. *Anglesea*, Vin. Ab. Condition, Q b ; *Cockerell* v. *Barber*, 16 Ves. 464 ; *Campbell* v. *Graham*, 1 Russ. & Myl. 453 ; 1 Roper on Legacies, 861 ; Story Confl. §§ 309, 313.

*W. Sohier*, for John Townsend Coffin, to the point that the word " property " included the testator's interest in lands, cited *Doe* v. *Lainchbury*, 11 East, 290 ; *Doe* v. *Langlands*, 14 East, 370.

*T. B. Hall*, for Isaac Tristram Coffin, to the point that the testator having virtually, though not in terms, directed the land to be turned into money, it must be considered as personalty cited *Fletcher* v. *Ashburner*, 1 Bro. C. C. 499 ; *Wheldale* v. *Par tridge*, 5 Ves. 396 ; 1 Jarman on Wills, 473.

*W. S. Dexter*, for the daughter of John Townsend Coffin